Army Base in Glasgow Mr. Nowak, we're prepared to hear your argument. Yes, Your Honor. I'm not sure how my voice is coming through, so I'm listening to it at the same time, but I can hear you fine. Very good. We can certainly hear you as well. Please come to the podium and deliver your argument. Good morning and welcome, and please proceed. Good morning, Your Honors. May it please the Court, I think it's helpful at this point to mention the items that were found by the Armed Services Board that are relevant to this appeal but are not in dispute. The Board found that All Fair had met its burden of proving its performance costs prior to the termination for convenience. That amount was found to be $2,575,059. This was after all the costs were analyzed under the FAR regulations and accounting regulations. The Board also determined that the adjusted contract price as of the termination for convenience was $2,495,000, and there's no dispute about that. There's no dispute about either number. Excuse me? There is no dispute, is there, about either number? No, I'm sorry. The numbers I'm giving you now, there's no dispute about. Well, why don't you focus on where the dispute arises. Well, the dispute arises but for the Board finding a loss adjustment based on the loss adjustment formula in the FAR. The critical part of that formula, if you recall, the top number is the adjusted contract price divided by the pre-construction approved costs plus the cost to complete. Those two denominator numbers give you total performance. When you divide that into the adjusted contract price, you get a percentage. The loss adjustment then is calculated by that percentage. Here the percentage was approximately 93. Correct. And I understand your appeal to be based on the notion that that number was not adequately proven by the government, that number 93. Initially the Board found that the government did not meet its burden of proof with regard to the cost to complete. Mr. Peck's testimony was the primary government's witness on that count, and the Board in its findings said why that number, 500-some-thousand, was not adequate. And the Board also rejected the number you proffered and selected the number instead that came from the April 13th report, the 93%. So your case has to be that report is so deficient that it just can't be relied on by the Board. Correct. Why so? Because in arriving at that number, what the Board did, in fact, was take the approved costs that were incurred prior to the termination of the convenience, took a percentage number that was not calculated to keep track of costs. The 93.23% that the Board used was a number that came off of a monthly pay estimate. It was the basis of that number was to judge the physical completion of the work for purposes of metering out the contract price over monthly payments. And the Board then divided that 93.23% into the costs incurred in the pre-termination for convenience. In effect, homogenizing that number and saying that the cost to complete the remaining work was exactly equal, percent by percent, with the costs incurred prior to the termination for convenience. In other words, by dividing the number, you come out with each percent of performance represented $27,000, approximately $27,000 in performance costs. So if you know that there's 6.77% performance left and you assume incorrectly that every percent is going to be equal to that $27,000, you get the $189,000 that he determined. Well, it may be that there's some approximation in such an approach, but is there any authority that the number, the percentage, has to be calculated with some sort of perfection or it's automatically rejectable? Well, the standard is that his findings in that regard and his calculations have to be supported by substantial evidence in the case or evidence that a reasonable-minded person would accept. Well, you're not saying he did the math wrong, right? No. You're saying there's something inherently wrong with his methodology. You cannot determine the cost of the remaining work by saying it was exactly equal, percent by percent, with the work that occurred in the construction project, the 93%. Well, it might be true or it might not be true in any given case. Well, I can't see how it would, Your Honor. You're not manufacturing widgets where you can determine the unit cost here would be the same later. We're talking about a construction project, two buildings that started with the ground, bare earth, and in the last 6%, which involves a parking lot, some exterior lighting and painting, is no way possible for it to equal the cost expended in dealing with site preparation, dealing with putting the walls up, the foundation. You could be right that it's only a rough approximation and it's not a precise figure reflecting what actually would have happened on the ground if completion had occurred. But where is there a rule of law saying that it has to be precise? Well, I think when you get to the fact that it has to be substantially supported by the evidence and that a reasonable-minded person would accept that explanation, I think that's where it has to be at least precise to, in effect, what the board was doing is meeting the deficiency that the government had and not meeting their burden of proof. That's not quite accurate. The board held that what the government had relied on didn't meet their burden of proof, but the board then held that the April 13th report did meet the government's burden of proof. The only thing that the court did, Your Honor, is take a number out of the pay estimate, which was a number to measure physical completion of the work. On its face, it had no relationship to the costs incurred to attain that percentage of completion. But the board assumed that they were incorrectly. There's no way under the facts that you can assume that the cost to do this last 7% or 6% is the same. Did you submit any evidence to contradict this estimate or to challenge the costs to complete? Judge, our position at the hearing was that at the time, and the calculation is supposed to be what would it have cost to complete the work as of the termination. Our position was that as of the termination, the job that remained, the last percentage, the 6.77%, was in total chaos. The government had issued, prior to the termination, a suspense order for the exterior lighting work, which was required to complete the contract. They were contemplating changing that scope. They didn't have the money to do the work. But did you submit any evidence as to what it would have cost to complete the contract, not with modifications, but to complete the contract as it stood on the date of termination? Judge, our position was that you could not determine that factor because of the job and the status the job was in. There was no way you could determine. So some estimate had to be made. I don't think that—it was the government's—and they had the wherewithal to prove what that cost was. It was their burden. The evidence— And they chose to do that by making an estimate using this calculation. Correct, which the board rejected. That being so— Well, the board rejected it, but ultimately the board did adopt and chose a number that was a reasoned approximation of what it would cost. Well, that's the argument, Judge. I don't think it is reasoned. Well, that's what I'm trying to get at. What in this record challenges or undermines or indicates that that estimate was wrong? The sheer absence of the supporting evidence to justify those kind of findings and conclusions. At the time of the hearing, the government didn't think of the board's methodology or formula or math, nor did the appellant. This was something that—so it was not argued. The board decided this on their own when they deliberated and came up with their decisions. But it was placed in the record by the parties, this April 13th report, right? Where the 93 percent came from. Yes. Right. So it was in evidence. Correct. Even though it wasn't what the government was pointing to, it was placed in evidence. Correct. So why is it impermissible for the board to rely on a piece of evidence that's in the record that the board thinks proves an important part of the case? Judge, they can choose something in the record, but the purpose of the appeal and what we're here to decide is whether that decision to use it in the way they did is substantially supported by the record. There's no doubt that that number exists, but it's a big jump to get from that number and the cost to complete the work prior to construction to say it in any way relates to the cost after. Judge Lynn asked you twice, maybe three times, whether you put in any contrary evidence, and you never answered his question. We didn't put any. Our evidence was that you could not determine an estimate of the cost to complete because of the status of the job and the fact that the government was going to be changing the scope of the work. So your answer to his question is no, we didn't put in any evidence. Correct. OK. Anything further? Judge, and our position is that because the government didn't meet their burden of proof as to the cost to complete the work after the termination for convenience, the adjustment formula that should be utilized should have for that component of the denominator zero because it wasn't proved. So instead of seven percent, it should have been zero in your right. And when you multiply it, then the defendant. You'd be entitled to one hundred and fifty thousand or something in that ballpark. Ninety eight percent adjustment and they get the money that's left in the contract and undispersed plus the thirty three thousand plus dollars that was awarded for settlement expenses. Do you want to retain the rest of your rebuttal? Yes. Thank you. Miss Thomas. Good morning. Good morning. Council preliminarily. Were you aware that you were due here at nine thirty? Your Honor, I'm very sorry about that. I was here, but I didn't realize that I should have checked in upstairs at the clerk's office by that time. I see. Well, at least you were in the building or in the courtroom. That's reassuring to hear. And now that you know that check in is part of the procedure, along with physical arrival. Very well, then we know it won't happen again. Please proceed. May it please the court. The board properly interpreted implied federal acquisition regulation. Forty nine point two oh three adjustment for loss. To conclude that it did. Wouldn't we have to find that the April 13th report was an accurate calculation that carried the government's burden of proof? Yes. Now, how is it prepared? Your Honor, it was the final payment estimate based on actual progress that had been done up to that point. Now, when you say actual progress, you'll have to explain exactly what you mean by that. It was based on the work that had been completed at that time. Measured how? Measured by actual payments. I don't know what you mean by that. Opposing counsel said it was just measured by the payments that had been given. In your brief, I believe you said it represented the actual amount of work performed. They don't sound like they're necessarily the same thing to me. The final payment method, that April 13th statement, it says that 93.23% of the work had been completed. But how did he so conclude? Did he go out there and look at the building site and say, well, I can see that they built this and this and this, and the only thing they have left to do is this other thing here. And I can calculate that that undone piece of the work is only 7% because blah, blah, blah. I mean, is that how it was done? It was determined by the actual progression up to that point, Your Honor. I don't know what you mean, actual progression. Did the man who wrote the April 13th report go out to the site and visually inspect it? Or was he just operating off some papers on his desk? The actual payment estimate on the joint appendix on page 114 says that I checked the quantities covered by this bill estimate and that the work was actually performed. But my question to you is, how did he know that? How did he make that determination? I see that he wrote it down on his report and signed the report and dated the report. But how did he know that that was true? It appears that he based it on the quantities and the payment estimates based on what he said. That's what opposing counsel said. It's just based on how much work was paid for. That's not necessarily the same thing as how much work was physically done, right? Right, Your Honor. So there could be a big discrepancy here. Well, Your Honor, the standard is... Yes or no? It could be a discrepancy, Your Honor. All right. Now, did you call the... I forget the name of the man who prepared the report. But was he called as a government witness to explain how he did it? Your Honor, there were six days of testimony. I'm not sure if he was specifically called. I thought that he was not called, and therefore there's no explanation in the record, at least that I could find, as to how he came to the conclusions reflected in his one-page form where he filled out some boxes. It appears that the board relied on the form and not the testimony of the person that filled out the form, and that the form states that... Is that adequate? Is there an adequate predicate to credit what the form says? If you haven't heard testimony from the man who prepared it and you don't know what he looked at or what he counted or how he came up with those numbers, is that adequate proof? Well, Your Honor, the form does state that it's based on the payments that were actually made, and the standard is a reasonable estimate. It's not an exact science. And the board has relied on those type of estimates in these cases before, specifically the Charles G. Williams construction case. That's a case with similar facts where the contract was for improvements and repairs. How many other times has the board relied on this kind of estimate? The board also cites to appeal of R&B bewigs in which they speak. Two or three times? Yes, Your Honor. Never affirmed on appeal here? Never approved here? No, Your Honor. So it's open to argument and open to dispute, and opposing counsel is making the dispute as to whether this sort of an estimate meets the minimum requirement or not. Yes, Your Honor. And so what is your support for the view that it does meet the minimum requirement? It is a good enough estimate. It is reliable. It is accurate enough. What's your basis of saying that? Because it is based on actual payment estimates from this actual case. The board rejected an estimate by the government witness that was based on another contractor's work. And this was the most reliable evidence that was presented to the board to make an estimate. Al Fair didn't present any evidence. It's not disputed that in the board's view it was more reliable than what the government submitted and more reliable than what the contractor submitted. But opposing counsel's argument is, yes, of the three, it was the most reliable, but it wasn't reliable enough. It didn't meet the minimum standard. And you're saying, yes, it did. Well, we have to decide. Can't you help us understand why it should be viewed as a solid number with a solid predicate to it? Well, Your Honor, the government didn't meet its burden because this estimate, it just didn't come out of air. It was submitted by the government into evidence, and the board adopted it because it was— You certainly can't be saying because the government wrote it, it has to be viewed as sufficient. There certainly is no such rule of law. Some things the government writes are viewed as sufficient. Some things that government writes are viewed as not sufficient. No, I'm just making the point that the government did provide the board with this evidence. Well, of course. It's in the record. We know that, and the board mentioned it in its lengthy, detailed opinion. But I don't find much help in that to know whether this is a solid, reliable report done by a proper methodology. Well, Your Honor, just based on what's written in the report, it states that how much of the work was completed. The board relied on that and that this work was actually—it does state that this work was actually performed. But how do we know that's true? It says I—well, it says I checked the quantities covered by this bill estimate based on— in other words, he sat at his desk and looked at some installment payment records and made a calculation from those records. But it doesn't say I went out to the field and I looked at how much of the two munitions structures were finished. Yes, Your Honor. Yes, it goes on to say that he based it on payment records, that the quantities are correct, consistent with all previous computations actually checked. So all that means is if the government's estimates of when installment payments were due in the past were all accurate, then this 93 percent number would also be accurate. But it also would follow that if those earlier installment payment dates were miscalculated, then this 93 percent number is not correct. Yes, Your Honor. So how do we know whether the predicate determinations were solid or not? Well, Your Honor, it's an estimate. It was reasonable for the board to rely upon this estimate. It is based on payment records. It's one methodology. But our LPAIR didn't challenge it, right? They didn't submit evidence and oppose it. No, they didn't submit any evidence at all. And there is a concept of the presumption of regularity of government activity, right? Yes, Your Honor. And the good faith of government officials and so forth. Yes, Your Honor. And so if it says that and it isn't challenged, then it looks like it's a perfectly valid thing to rely on, isn't it? That's correct, Your Honor. Anything further? Your Honor, just one other point. LPAIR also argues that they're entitled to cost above and beyond settlement costs. But they've already applied a loss adjustment. They've already been paid that above and beyond. So to award them anything more would be a windfall. Further, for boring reasons, I ask that you affirm the board's decision. Thank you kindly. Mr. Millwack. Thank you, Judge. I think it's important to realize, Judge, that it's not merely the fact that the contracting officer chose a measure of performance, physical performance. But he chose it, relabeled it, and said that measure of performance also happens to be exactly equal to cost incurred. And that's where the board made an error. Because the measure of performance, the physical work, has no relationship or bearing on to what was left, what was involved, what kind of work was involved in the last 6.77%. Well, you say it has no relationship. Ms. Thomas argues it has quite a close relationship. Logically, it would have some relationship. So you've got to help us out here of how tight is the relationship. You can't just say rhetorically there's no relationship because that's plainly not so. There's some relationship, maybe not precise, but there's some relationship. Well, it's totally imprecise and doesn't meet the standard of substantial evidence, Judge. You can take a mathematical formula. Do your division and say that the cost to complete is exactly equal percent as it was in the beginning for entirely different work, for delays caused by the government, etc. You have to go in the field. You have to look at the work. Do an estimate by material labor. Does some case or regulation or statute so require? When you say you have to, you just mean it's your personal opinion that that's what ought to be done. But what authority requires that? Well, Judge, the authority is there's no statute that says you do that, but from a construction standpoint. There's no case either, is there, of any court? And the only board opinions on the issue, three, as I recall, are contrary to your argument. The board opinions, there was never the issue that we're bringing up here was not an issue in any of those other cases or any cases that made it to this court. I'm not talking about what we reviewed. I'm saying the board three times used this method in other cases. There were a couple of cases where one case the parties agreed to that kind of measurement of cost to complete. And there was mention of it indirectly in other cases. But the point here, Judge, not for only this case but cases in the future, that the government has the burden of proof of these costs. And they know how to do it. By this type of methodology, they can simply say, well, the costs are exactly the same as they were to do the other work. And now try to shift the burden of this proof onto the contractor, which is not required. I think we have your point. Thank you, Judge. Thank you both for spirited argument. We'll take the case under advisement.